**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **STATE AUTO PROPERTY &** | ) | |
| **CASUALTY COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:11-CV-499 (MTT)** |
| | ) | |
| **SHELIA HENDERSON, ANDREW** | ) | |
| **CALLOWAY, and BRITTANY** | ) | |
| **CALLOWAY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Before the Court is Plaintiff State Auto Property & Casualty Company's Motion for Summary Judgment. (Doc. 32).[1] Plaintiff State Auto Property & Casualty Company (State Auto) contends that, as a matter of law, the homeowner's insurance policy it issued to Defendant Shelia Henderson (Henderson) excludes liability coverage for Defendants Andrew and Brittany Calloway's tort claims arising out of the death of their son while in the care of Henderson's home daycare operation, Sister-n-Sister. For the following reasons, the Motion is **GRANTED**.

---

[1] Although Plaintiff State Auto moved for summary judgment against all Defendants, Defendant Shelia Henderson was in default at the time the Motion was filed. (Doc. 10). Plaintiff State Auto has moved for a default judgment against Henderson, which has been entered. (Docs. 42 and 43). Thus, this addresses only the Calloway Defendants.

# I.    FACTUAL AND PROCEDURAL HISTORY[2]

## A.    The State Auto Homeowner's Insurance Policy

Henderson had a homeowner's insurance policy with State Auto that went into effect May 29, 2010.  (Doc. 31 at 5, ¶ 21; Doc. 35 at 4, ¶ 21; Doc. 32-4 at 2, ¶ 5). Henderson renewed the State Auto policy on May 29, 2011.  (Doc. 32-4 at 2, ¶ 6).   The coverage period for the renewed policy was May 29, 2011, to May 29, 2012.  (Doc. 31 at 6, ¶ 30; Doc. 35 at 5, ¶ 30; Doc. 32-4 at 11).   The policy's declaration page identifies Henderson's home address as 100 Georgetown Boulevard, Warner Robins, Georgia. (Doc. 32-4 at 11).

The policy excludes coverage for "'Bodily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured;' whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured.'"  (Doc. 32-4 at 29).  "Business" is defined as:

> a. A trade, profession, or occupation engaged in on a full-time, part-time or occasional basis; or
> b. Any other activity engaged in for money or other compensation, except the following:
>   (1) One or more activities, not described in (2) through (4) below, for which no "Insured" receives more than $2,000 in total

---

[2] The Calloway Defendants object to the Court's consideration of adjuster Carol Williams's Declaration and attached exhibits, which includes a transcript of a statement Williams took from Henderson. (Doc. 32-1).  The Calloway Defendants argue State Auto breached its duty of good faith to its insured, Shelia Henderson, by interviewing her about the claim.  (Doc. 34 at 3). There is a more basic reason to exclude Henderson's statements as related in Williams's affidavit.  Henderson's statements are inadmissible hearsay.  Though a statement "offered against an opposing party" that was "made by [that] party" is not hearsay pursuant to Federal Rules of Evidence 801(d)(2)(A), Henderson's statements are being offered against the Calloway Defendants.  The Court permitted State Auto to address this issue in a post-hearing brief, but State Auto could cite no authority establishing that a defaulting defendant's statements are admissible against a non-defaulting co-defendant.  Thus, the Court does not consider Henderson's hearsay statements.  *See also* (Doc. 41).

compensation for the 12 months before the beginning of the policy
period;

(2) Volunteer activities for which no money is received other than
payment for expenses incurred to perform the activity;

(3) Providing home day care services for which no compensation is
received other than the mutual exchange of such services; or

(4) The rendering of home day care services to a relative of an "Insured."

(Doc. 34-2 at 14).  The policy also contains an endorsement specifically excluding

liability coverage for "Home Day Care Business" that includes the same "business"

definition outlined above. (Doc. 34-2 at 39).

**B.     Henderson's Employment and Sister-n-Sister Home Day Care**

Beginning on July 30, 2009, Henderson was employed by the Houston County

Board of Education as a bus driver.  (Doc. 32-7 at 2).  According to Henderson's

employment record, she worked four hours per day for one hundred eighty-two days per

year and was paid $10,556.  (Doc. 32-7 at 1).  However, Henderson testified that she

generally would leave her house at 5:30 a.m. for her morning shift and would finish her

morning route about 9:00 a.m.  (Doc. 26-1 at 41:13-17).  Henderson further testified that

she would leave her house again at 1:15 p.m. for her afternoon shift and would finish

her afternoon route between 4:30 and 5:30 p.m.  (Doc 26-1 at 41:23-42:6). Thus,

according to Henderson's testimony she worked roughly seven hours a day, five days a

week, excluding approximately two months for "summer break."  (Doc. 26-1 at 41-43).

In March 2011, Henderson attended a class offered by Bright from the Start.[3]

(Doc. 31 at 2, ¶ 3; Doc. 35 at 2, ¶ 3).  Henderson also began "setting-up" a home

daycare operation, called Sister-n-Sister Family Home Day Care.  (Doc. 31 at 1, ¶ 1;

---

[3] Bright from the Start is a Georgia state agency that regulates childcare and pre-kindergarten
facilities and provides some training.  *See* http://decal.ga.gov/BftS/About.aspx.  There is no
evidence that Henderson's daycare operation was licensed by the State.

Doc. 35 at 1, ¶ 1).  She set up Sister-n-Sister in her home, the "insured location," by enclosing half of her garage to house the daycare operation.  (Doc. 31 at, ¶ 2; Doc. 35 at 1, ¶ 2).  Henderson hired her sister to run Sister-n-Sister's childcare services during the time Henderson was driving the school bus.  (Doc. 31 at 3, ¶ 10; Doc. 35 at 2, ¶ 10).  On March 7, 2011, Henderson applied to the City of Warner Robins for an Occupation Tax Permit for Sister-n-Sister.  (Doc. 32-5 at 3).  In mid-April, the City approved Henderson's application, and in May[4] the City issued her an Occupation Tax Permit for Sister-n-Sister.  (Doc. 32-5 at 1-2).  Henderson also received a tax-identification number from the Internal Revenue Service.  (Doc. 21 at 2, ¶ 7; Doc. 35 at 2, ¶ 7).

Brittany and Andrew Calloway hired Sister-n-Sister to provide childcare services for their son, Andrew Jr., in mid-June.  (Doc. 31 at 3, at ¶¶ 13, 14; Doc. 35 at 3, ¶¶ 13, 14).  At that time, Sister-n-Sister cared for Andrew Jr. for five to seven days a week for approximately seven to eight hours each day.  (Doc. 32-6 at 4).  The Calloway Defendants agreed to pay Henderson $90.00 per week in cash for childcare services.  (Doc. 32-6 at 5-6).  This payment agreement was flexible and would vary on occasion depending on the Calloway Defendants' financial situation.  (Doc. 32-6 at 6).

Further, the Calloway Defendants "believed" that Henderson was caring for three to five children, in addition to Andrew.  (Doc. 32-6 at 5).    For example, Mr. Calloway's sister, Charlotte Calloway, took her daughter to Sister-n-Sister.  (Doc. 32-6 at 7-8).  Charlotte Calloway also paid $90.00 each week she used Sister-n-Sister's childcare services.  (Doc. 32-6 at 7-8).

---

[4] Though the Occupation Tax Permit itself does not contain a "start date," the record reflects that Henderson paid for the permit May 13, 2011.  (Doc. 32-5 at 1).

On July 31, 2011, Andrew Jr. died while he was in Henderson's care.  (Doc. 31 at 4, ¶¶  19, 20; Doc. 35 at 4, ¶¶  19, 20).

After the Calloway Defendants demanded that State Auto pay its policy limits to settle their claims against Henderson, State Auto filed the present declaratory judgment action.  (Doc. 1).  State Auto now moves this Court to find that Henderson's homeowner's insurance policy does not provide coverage for Andrew Jr.'s death, because Henderson's home daycare operation, Sister-n-Sister, falls within the policy's exclusion of coverage for injuries arising out of an insured's business.

## II.    SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy his burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.*  (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.   Insurance Contract Interpretation

The Court must first begin by examining "the source of coverage itself—the general promises of coverage made in the insurance policy.  If the general policy does not cover the claim in question, an inquiry into any applicable exclusions is unnecessary."  *Allstate Insurance Co. v. Harkleroad*, 2010 WL 2076941, *4 (S.D. Ga.) (internal quotations and citation omitted).  The insurer has the burden of using language that is clear and precise.  *Travelers Indem. Co. v. Whalley Construction Co.*, 160 Ga. App. 438, 440, 287 S.E.2d 226 (1981).   When the language in an insurance policy is clear, the "policy is interpreted according to its plain language and express terms, just as any other contract."  *Alewine v. Horace Mann Insurance Co.*, 197 Ga. App. 479, 480, 398 S.E.2d 756 (1990).  "The words used in the policy are to be given their usual and common significance and are to be construed in their ordinary meaning."  *Harkleroad*, 2010 WL 2076941, *6.

"Under Georgia law, an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case."  *First Specialty Insurance Corp. v.*

*Flowers*, 284 Ga. App. 543, 544, 644 S.E.2d 453 (2007).  "[A]ny exclusion from coverage sought to be invoked by the insurer is to be strictly construed."  *Cunningham v. Middle Georgia Mutual Insurance Co.*, 268 Ga. App. 181, 185, 601 S.E.2d 382 (2004).  But "[i]f policy exclusions are unambiguous they must be given effect even if beneficial to the insurer and detrimental to the insured.  [The Court] will not strain to extend coverage where none was contracted or intended."  *Flowers*, 284 Ga. App. at 545, 644 S.E.2d at 455 (internal quotations and citations omitted).

However, if a term of a policy of insurance is susceptible to two or more constructions the term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured.  O.C.G.A. § 13-2-2(5).  A policy is genuinely ambiguous only when the phrasing of the policy is so confusing that an average policyholder cannot make out the boundaries of coverage.  *Georgia Baptist Children's Home v. Essex Insurance Co.*, 207 Ga. App. 346, 347, 427 S.E.2d 798 (1993).

**B.    Whether Henderson's home daycare operation, Sister-n-Sister, falls within the scope of the State Auto homeowner's insurance policy's business exclusion**

The State Auto policy excludes coverage for "'Bodily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured;' whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured.'"  (Doc. 32-4 at 29).   Two policy definitions of business are potentially applicable.

a.  A trade, profession, or occupation engaged in on a full-time, part-time or occasional basis; or
b.  Any other activity engaged in for money or other compensation, except the following:

> (1) One or more activities, not described in (2) through (4) below, for
> which "Insured" receives more than $2,000 in total compensation
> for the twelve months before the beginning of the policy period.

(Doc. 34-2 at 14).  The Court does not address the second definition except to note that State Auto has not established as a matter of law that Henderson received more than $2,000 from her home daycare operation during the twelve months before the beginning of the policy period.  While there is sufficient evidence to allow a jury to reach that conclusion, the facts are not sufficiently undisputed to allow the Court to do so.  Nor is it necessary to discuss the policy's endorsement specifically excluding coverage for home daycare businesses, because Henderson's home daycare operation clearly falls within the policy's general business exclusion.

Under the policy's general business exclusion, an insured's activity is a business if the activity is a "trade, profession, or occupation" in which the insured engages "on a full-time, part-time or occasional basis."   (Doc. 34-2 at 14).  Contract terms are not ambiguous merely because the Parties disagree as to the proper interpretation of those terms.  A contract is only ambiguous when a reasonable person could find the terms are susceptible to more than one interpretation.  That is not the case here.  *See Kessel v. State Auto. Mutual Ins. Co.*, 871 N.E.2d 335 (Ind. App. 2007) (The court, in interpreting the exact same business exclusion, held that the contract was "not ambiguous because it [was] not susceptible to more than one reasonable interpretation.").

Indeed, the Calloway Defendants do not really argue that these terms are ambiguous.[5]  Rather, they argue that State Auto has not proved that Sister-n-Sister is a

---

[5] Ironically, the Parties' respective positions on ambiguity and the admissibility of extrinsic evidence are the opposite of the positions typically taken by parties disputing insurance

"trade, profession, or occupation."  More specifically, relying on Georgia law, they argue that Sister-n-Sister must have been Henderson's primary or principal "trade, profession, or occupation" in order for the daycare operation to fall within the policy's business definition.

The Calloway Defendants argument, through artful in theory, is hamstrung by both the terms of State Auto's policy and the facts of this case.  Based on the undisputed facts, Henderson's home daycare operations, Sister-n-Sister, clearly falls within the policy's business definition.  Specifically, the record establishes that Sister-n-Sister is Henderson's "trade, profession, or occupation engaged in on a full-time, part-time or occasional basis."

It is undisputed that in March 2011, Henderson attended a Bright from the Start class and began "setting-up" up Sister-n-Sister Home Day Care in her home by enclosing half of her garage to house the daycare operations.  (Doc. 31 at 2, ¶ 3; Doc. 35 at 2, ¶ 3) (Doc. 31 at 1, ¶ 2; Doc. 35 at 1, ¶ 2).  Henderson hired her sister to watch children for Sister-n-Sister during the time Henderson was driving the school bus. (Doc. 31 at 3, ¶ 10; Doc. 35 at 2, ¶ 10).  On March 7, 2011, Henderson applied to the City of Warner Robins for an Occupation Tax Permit for Sister-n-Sister.  (Doc. 32-5 at 3).  In mid-April, the City approved Henderson's application, and in May the City issued her an Occupation Tax Permit for Sister-n-Sister.  (Doc. 32-5 at 1-2).  Henderson also

---

coverage.  Although State Auto does not directly say that the policy language is ambiguous, it argued strongly that Henderson's intent and expectations, as contained in her inadmissible statement, are admissible to help define the policy's terms.  The Calloway Defendants rightly point out that such evidence is admissible only if the relevant policy provisions are ambiguous and, they argue, they are not.

received a tax-identification number from the Internal Revenue Service.  (Doc. 21 at 2, ¶ 7; Doc. 35 at 2, ¶ 7).

Further, the undisputed evidence shows that Sister-n-Sister was consistently providing childcare services for compensation.  The Calloway Defendants hired Sister-n-Sister to provide childcare services to their son in mid-June.  (Doc. 31 at 3, at ¶¶ 13, 14; Doc. 35 at 3, ¶¶ 13, 14).  Sister-n-Sister cared for Andrew for five to seven days a week, for approximately seven to eight hours each day.  (Doc. 32-6 at 4).  The Calloway Defendants agreed to pay Henderson $90.00 per week in cash for childcare services.  (Doc. 32-6 at 5-6).  Further, the Calloway Defendants acknowledge that Henderson was also caring for three to five other children.  (Doc. 32-6 at 5).

Notwithstanding these facts, the Calloway Defendants point out, correctly, that Georgia cases have defined the phrase "trade, profession, or occupation" as one's *principal* employment.  For example in *Larson v. Georgia Farm Bureau Mutual Insurance Co.*, 238 Ga. App. 674, 520 S.E.2d 45, (1999), the policy at issue defined business as one's "trade, profession or occupation."  *Larson*, 238 Ga. App. at 675, 520 S.E.2d at 47.  The Georgia Court of Appeals stated: "'Trade is the business one practices or the work in which one engages regularly.  Profession is a principal calling, vocation, or employment.  Occupation means the principal business of one's life.'"  *Id.* at 675, 520 S.E.2d 45, 47 (quoting *Brown v. Peninsular Fire Insurance Co.*, 171 Ga. App. 507, 508, 320 S.E.2d 208, 209 (1984)); *See also* 9A Couch on Ins. § 128:13 (same definitions).

However, State Auto's definition of business is broader than the definition the Georgia Court of Appeals considered in *Larson*.  Unlike the policy in *Larson*, State

Auto's policy clearly does not require that the business be the insured's principal profession or vocation.  The activity is a business even though the insured engaged in the activity only on a "part-time or occasional basis."  Thus, unlike the business definition in *Larson*, State Auto's policy includes part-time or occasional business activity.[6]

Further, though Henderson was also working full-time[7] as a bus driver for the Houston County School Board, the Court has found no case and the Calloway Defendants have cited no case, holding that an insured cannot have two "trade[s], profession[s], or occupation[s]."   Henderson made every effort to make sure that Sister-n-Sister was established as a legitimate daycare operation.  She hired an employee who provided the childcare services for the hours that she could not, and she filed the appropriate business licensing paperwork with the City of Warner Robins.  In sum, all undisputed facts support State Auto's contention that Sister-n-Sister is a business as defined by the State Auto policy. *See e.g. Furgerson v. Cambridge Mutual Fire Insurance Co.*, 237 Ga. App. 637, 536 S.E.2d 350 (1999) (The court, interpreting a slightly different policy business exclusion, held that an insured who had been providing day care services for ten consecutive weeks in her home to a non-relative, and who had received money for those services, fell within the policy's exclusion to providing

---

[6] Moreover, the court in *Larson* did not address the issue of whether a home business activity that differs from the insured's principal trade, profession or occupation falls within a policy's business exclusion.  In *Larson*, the insured's home business activity happened to be the same as his principal vocation as an electrical engineer.  The Calloway Defendants cite no case holding that a business exclusion is limited solely to the insured's primary occupation or employment.  *See* 9A Couch on Ins. § 128:13.

[7] Though it may be disputed whether Henderson was a "full-time employee" as defined by the Houston County School Board, the Court is satisfied that the time Henderson testifies she spent working as a bus driver constituted full-time employment for all practical purposes.

coverage for liability "arising out of or in connection with a business engaged by an insured.").

Accordingly, the Court finds Henderson's Sister-n-Sister home daycare operation is a "business" for purposes of State Auto's homeowner's insurance policy's business exclusion; and thus, the Court finds that Henderson's policy does not provide liability coverage for "injury" "arising out of or in connection with" Sister-n-Sister.  (Doc. 32-4 at 29).  Specifically, the Court further finds that Henderson's State Auto homeowner's policy does not provide coverage for claims arising out of the death of the Calloway Defendants' son while in the care of Sister-n-Sister Home Day Care and Defendant Shelia Henderson.

## VI.    CONCLUSION

Accordingly, Plaintiff State Auto Property and Casualty Company's Motion for Summary Judgment is **GRANTED**.  (Doc. 30).

**SO ORDERED**, this 11th day of March, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT